Matter of Bain v Strulovitch (2025 NY Slip Op 50926(U))

[*1]

Matter of Bain v Strulovitch

2025 NY Slip Op 50926(U)

Decided on June 6, 2025

Supreme Court, Westchester County

Jamieson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2025
Supreme Court, Westchester County

In the Matter of the Application of Moshe Bain, Petitioner-Plaintiff,

against
Samuel Strulovitch, MS Acquisition I, LLC, and 10 Claremont Avenue, LLC, Respondents-Defendants, and Parkview Operating Co., LLC, Westchester Gardens Realty LLC, Jonathan Bleier, and Robert Bleier, Nominal Defendants.

Index No. 75548/2024

Bleakley Platt et al.
Attorneys for Moshe Bain
One North Lexington Avenue
White Plains, NY 10601
Abrams Fensterman, LLP
Attorneys for Robert Bleier
81 Main Street, Suite 400
White Plains, New York 10601
Bronstein, Gewirtz et al. 
Attorneys for Samuel Strulovitch, MS Acquisition I, LLC and 10 Claremont Avenue, LLC
60 East 42nd Street, Suite 4600
New York, New York 10165

Linda S. Jamieson, J.

The following papers numbered 1 to 9 were read on these motions:
Paper Number
Notice of Motion, Affirmations and Exhibits 1
Memorandum of Law 2
Notice of Motion 3
Memorandum of Law 4
Affirmation and Exhibits in Opposition 5
Memorandum of Law in Opposition 6
Memorandum of Law in Opposition 7
Memorandum of Law in Reply 8
Memorandum of Law in Reply 9
There are two motions before the Court, both filed by respondents-defendants Samuel Strulovitch, MS Acquisition I, LLC ("MS"), and 10 Claremont Avenue, LLC ("Claremont") (collectively, "movants"). The first motion seeks to dismiss the petition/complaint. The second motion seeks to dismiss the cross-claims of Robert Bleier ("RB").
Background
According to movants, Westchester Center for Rehabilitation and Nursing (the "Nursing Facility") is a nursing home located in Mount Vernon. Nominal defendant Parkview Operating Co., LLC ("Parkview") is the current operating company for the Nursing Facility, and nominal defendant Westchester Gardens Realty LLC ("Westchester Gardens") owns the real estate where the Nursing Facility is located. Prior to February 17, 2010, MS was the operator of the Nursing Facility and Claremont owned the realty where it is located. In April 2010, MS, Claremont, non-party Michael Melnick, and Strulovitch entered into an Asset Purchase Agreement (the "APA") to, among other things, sell the Nursing Facility and the realty to Parkview. After they signed the APA, Strulovitch proposed that he acquire a 48% membership interest in Parkview in exchange for a $500,000 capital contribution that would then be repaid to him. Nominal defendant Jonathan Bleier ("JB") rejected Strulovitch's proposal. Thereafter, Strulovitch told JB that he had $600,000—$700,000 invested in the Nursing Facility and could not afford to suffer that loss, and JB told Strulovitch he would try to figure out a way to help Strulovitch get his capital back. In March 2011, the parties executed an Amendment to the APA, which, among other things, provided that Westchester Gardens would purchase the realty from Claremont. On April 15, 2011, Westchester Gardens closed on its acquisition of the realty. At that time, JB owned a 24% interest in that entity. In September 2011, Parkview filed certain paperwork with the State of New York that reflected that the owners of Parkview were identified as JB (42%), Moshe Bain (4%), Tovah Bain (4%), and others. Strulovitch was not identified as an owner of Parkview. 
According to the petition, the current ownership interests of Parkview are JB, 89.81% and Moshe Bain, 10.19%. The current ownership interests of Westchester Gardens are JB, 68%, RB, 23% and Moshe Bain, 9%. In 2022, Strulovitch claimed that JB had agreed that Strulovitch would own a membership interest in Parkview and Westchester Gardens, which JB rejected. As a result, Strulovitch commenced an arbitration before a rabbinical arbitral panel in Rockland County. The parties were Strulowitz, (on his own behalf and on behalf of MS and Claremont) and JB (on his own behalf and on behalf of Parkview and Westchester Gardens). Bain was not a party in the arbitration and did not participate at all. Nor was RB a participant. Bain asserts in the petition in this action that Strulovitch's commencement of the rabbinical arbitration "was ultra vires, and therefore, void." Bain further asserts that this constitutes misconduct because the Rockland arbitration directly impacted Bain (and RB). Although the Rockland rabbinical arbitration held four hearings, there is no transcript. Nor did the arbitral panel issue any reasoning or explanation for its award, which merely states that that "'Party A [Strulovitch] has 22% in the aforementioned Nursing Home [Operation and Realty].'" Bain contends that he was a necessary party to the rabbinical arbitration "because the Award dramatically impacts his interests in Parkview and Westchester Gardens." 
In October 2024, Bain filed his own arbitration before a different rabbinical court in Brooklyn, seeking a rehearing and vacatur of the Rockland award (the "Brooklyn arbitration"). In the Brooklyn arbitration, the rabbinical court issued an injunctive order temporarily restraining Strulovitch from taking any action to enforce the Rockland award pending a decision in the Brooklyn arbitration.
After receiving the initial arbitration summons in the Brooklyn arbitration, in early October 2024, Strulovitch retained Rabbi Moshe Yitzchok Schonberger to represent him. When Strulovitch did not file an answer, the Brooklyn rabbinical court issued a contempt warning. In response to that warning, Rabbi Schonberger sent an email to multiple people, including the [*2]rabbinical court, stating, in relevant part [FN1]
that "to the extent Mr Baine has any claim to Mr Strulivich Mr strulivich wants to go ZBLA [each party appoints an arbitrator]; (he asked that I be his arbitrator)." The rabbinical court responded "Please be advised: The Rabbinical Court has been in receipt of the parties responses to the lettrs sent and there has been a unilateral willingness to participate in a ZBLA panel arbitration to settle the matters of dispute between the parties. Please be in contact twitch the Rabbinical Court to advise the final choice of arbitrator and to offer third/presiding arbitrators." Several hours later, Rabbi Schonberger responded, "To be clear Mr Struivtz agreed for a ZBLA [each party names one arbitrator] to determine whether or not Mr Baine has a claim to Mr strulivitz personally. Regarding any issue with Mr blier we were in Mechoin Rabbinical Court and they gave a final award." 
The next morning, the rabbinical court issued a document that stated "In the matter of Baine vs Bleier Strulowitz This notice will confirm that the above-mentioned parties in regard to Westchester Gardens and Sam Strulowitz have agreed to arbitrate the disputes between them and have appointed arbitrators that will select a neutral arbitrator to form a Rabbinical Court of ZBLA [each party appoints an arbitrator]. Our Rabbinical Court will retain jurisdiction as the Rabbinical Court that has issued the summons, and the injunction remains in place until the new Rabbinical Court is in place and will decide all matters. Please advise our Rabbinical Court when the neutral arbitrator is chosen and please send a copy of the signed Arbitration agreement to our Rabbinical Court for our files." 
Analysis
The Court begins by addressing the motion to dismiss the petition. The first basis for this motion is that "the Petition does not establish any legally cognizable arbitration or arbitration agreement. The documents referenced by the Petition — and on which the Petition's cause of action relies — demonstrate that there was no written arbitration agreement between Bain and Strulovitch and that Strulovitch did not waive any objection to an arbitration by participating in an arbitral proceeding."
As the Second Department held very recently, "On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must accept the facts alleged in the complaint as true, afford the plaintiff the benefit of every possible favorable inference, and determine only whether the alleged facts fit within any cognizable legal theory." Kisla v. Jefferson, 237 AD3d 1082, 1083 (2d Dept. April 23, 2025). 
It has long been settled that "Arbitration is favored in New York State as a means of resolving disputes, and courts should interfere as little as possible with agreements to arbitrate." Ferarro v. E. Coast Dormer, Inc., 209 AD3d 717, 717, 176 N.Y.S.3d 105, 107 (2d Dept. 2022). Although movants insist that they never agreed to participate in the Brooklyn arbitration ("far from participating and agreeing to arbitrate in the Second Arbitration — Schonberger had refused to participate in the Second Arbitration on behalf of Strulovitch and there was no agreement among the parties to arbitrate"), this is not as definitive as movants insist. Indeed, the documents submitted to the Court by the parties indicate that Strulovich was not entirely averse to participating in the Brooklyn arbitration, as he chose a rabbi to represent him, who said: "to the extent Mr Baine has any claim to Mr Strulivich Mr strulivich wants to go ZBLA [each party appoints an arbitrator]; (he asked that I be his arbitrator);" and "To be clear Mr Struivtz agreed for a ZBLA [each party names one arbitrator] to determine whether or not Mr Baine has a claim to Mr strulivitz personally. Regarding any issue with Mr blier we were in Mechoin Rabbinical Court and they gave a final award." These statements appear to indicate a reluctant willingness to participate in the Brooklyn arbitration — a finding that the Court does not, on this motion to dismiss, make. Instead, it finds that this is not a valid basis for dismissing the petition. Should the parties continue to disagree as to whether movants and Bain entered into an agreement to [*3]arbitrate, the Court must hold a hearing. McCarthy v. Sea Crest Health Care Ctr., LLC, 189 AD3d 818, 133 N.Y.S.3d 482, 483 (2d Dept. 2020) ("When there is a disagreement about whether or not the parties agreed to arbitrate, the Court must hold a hearing."). 
Movants raise a second reason for their motion to dismiss the petition, which they also raise in their motion to dismiss the cross-claims. In nearly identical language, they assert that "Bain [and RB] cannot seek vacatur of the Award pursuant CPLR 7511(b)(2) for the simple reason that Bain [and RB] was not a party to the arbitration or the arbitration agreement, as the Petition emphasizes. CPLR 7511(b)(2) provides, in relevant part: 'The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that: (i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or (ii) a valid agreement to arbitrate was not made[.]' (Emphasis added.) As the statute's plain language makes clear, only someone who was a party to the arbitration or the arbitration agreement can seek vacatur of the arbitral award under CPLR 7511(b)(2)."
In support of their position, movants claim that as neither Bain nor RB were parties to the Rockland arbitration, they lack standing to seek to vacate it, as CPLR § 7511 provides that an "award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced." They cite a single case in support of their argument that nonparticipants in an arbitration may not seek to vacate an award. In that case, the Court held that an individual was unable to vacate an arbitration award in which she was not a party, but was represented by her union. See Alava v. Consol. Edison Co. of New York, 183 AD2d 713, 714, 583 N.Y.S.2d 291, 292 (2d Dept. 1992) ("Since the petitioner was a 'party' to neither the collective bargaining agreement nor the arbitration, she lacks standing to seek vacatur of the arbitrator's award."). See also Chupka v. Lorenz-Schneider Co., 12 NY2d 1, 6 (1962) ("Under such a collective bargaining agreement the union represents all the employees as to all covered matters and each individual employee in becoming a beneficiary to the contract gives up to the union, as his representative, his individual right to sue on or litigate as to the contract."). In those cases, the non-party was actually represented at the arbitration, as set forth in a collective bargaining agreement.
This is not the situation here, however. In this matter, the interests of neither Bain nor RB were represented by anyone participating in the Rockland arbitration. See generally Matter of Gault (U.S. Bobsled & Skeleton Fed'n), 179 AD2d 881, 883, 578 N.Y.S.2d 683, 685 (1992) (petitioners lacked standing to challenge arbitration award when they "do not deny actual awareness of the arbitration and did not seek to intervene."). As both Bain and RB claim that their interests are affected by the outcome of the Rockland arbitration, a proceeding in which they had no opportunity to participate, the Court declines to dismiss their claims on this basis.
With respect to movants' other bases for dismissing Bain and RB's claims, none have any merit. For example, movants assert that the award only affects JB, not either Bain or RB, because only JB's ownership interests were affected by the award. Both Bain and RB disagree, asserting that not only did the award not clearly state that, but, more importantly, as the businesses at issue are intertwined and heavily regulated, changing the ownership interests may have regulatory consequences. They also assert that they have rights of first refusal which would be affected by the transfer of JB's interests which, naturally, movants dispute. 
Moreover, movants contend that the request for a declaratory judgment declaring the respective ownership interests of the parties in Parkview and Westchester Gardens, "if the Award in is confirmed" [sic] is irrelevant because "if the Award is confirmed, there would be no substantial and justiciable controversy about the membership interests in Parkview and Westchester Gardens" because "if the Award is confirmed and Jonathan Bleier performs, then Jonathan Bleier's membership interest will be reduced accordingly, and the membership interests of Bain and Robert Bleier will remain the same. There would be no substantial controversy." The Court does not concur. It is clear from the papers submitted to the Court that there are indeed substantial controversies between the parties about multiple issues, ranging from the [*4]propriety of the Rockland arbitration and the exclusion of Bain and RB from that arbitration; to the meaning and consequences of the award in that arbitration; to whether Strulovitch agreed to the Brooklyn arbitration by selecting a rabbi to represent him, among other controversies.
Accordingly, the Court denies the motions to dismiss in their entirety.[FN2]

The foregoing constitutes the decision and order of the Court.
Dated: June 6, 2025
White Plains, New York
HON. LINDA S. JAMIESON
Justice of the Supreme Court

Footnotes

Footnote 1: In the emails recounted herein, all of the typos are in the originals and their translations.

Footnote 2: All other arguments raised, and all materials submitted by the parties in connection therewith, have been considered by this Court, notwithstanding the specific absence of reference thereto.